06-12-42, Mr. Davis. Thank you, Your Honor. On behalf of the Intender, Colonel Serenkin, and my colleague, Judge Jeffrey Enderman, what brings us to the courtroom today is an application for a reissue of patents. I know the court is well-familiar with the facts. This isn't a clerical error. We would say that it was a mistake, a deliberate mistake. You listened with interest to the previous argument. I did. I did. I did. And I know you're familiar with the facts, but I want to start by saying that the use of reissue to perfect priority has been done on the courts repeatedly in the past. Three courts have looked at it. Three courts have decided that it's permissible. The Board of Appeals was reversed in every single one of those cases. The District of Columbia Circuit in November 1968. The Fonzin case, the predecessor court, the CCPA in 1975. And Sampson in the District of Columbia in 1976. The Board has again refused to allow the reissue to perfect priority. And that's what brings us here. This was a deliberate choice. And it is an error of judgment. It was a deliberate choice. It wasn't a demonstrated intent to do A, but somehow it ended up B. They definitely decided to do A. Well, you can see, Your Honor, it was an absolutely deliberate, conscious choice. Under the Judge Rich's decision in Wadleyer. It was a decision of the court. You just wrote it. Sorry? It was a decision of the court. Judge Rich was just the owner. That's right, Your Honor. And it has been the law of this court ever since. And he did remark, and he did write that, that he was an author, one of the co-authors of the 52 Act. And he said, and I think there's some persuasion in this, and it's never been tampered with or changed by this court, that the definition of mistake means wrong choice. And in this case, the attorney isn't here. He has passed away. Had two paths available to him. He could have picked the 1998, the January 1998 date, which would never have caused any problem whatsoever. Or he could have picked the February later date. And that was the path that he took. We concede and have conceded since the beginning. This was done deliberately, intentionally, consciously. But it was a mistake, and it was a wrong procedural choice. Isn't there a difference, though, in terms of what you refer to in Judge Rich's opinion? I mean, I think Judge Rich is referring to the situation where there are two options, A and B. And the person always intends to pick A. But through some slip, either a paper slip, the record shows that he or she selected B. That's, I think, kind of what I'll call the Rich in mind mistake. Whereas here you have a situation where the person had a choice of A and B. And they picked the one that they had in mind, A. But later down the road, it comes to pass that, oh, gosh, it would have been better to pick B. Isn't that what we have as opposed to what Judge Rich was thinking? No, Your Honor. Judge Rich's decision was embellished by this court in the Wilder case, where, as you'll recall, the patent attorney in Wilder made a deliberate, conscious decision and a choice. He picked between A and B. And it turned out that he was wrong about that. And the court remarked that an attorney's failure to appreciate the full scope of the invention is one of the most common sources of defects in the patent. Now, here, that's kind of like a deliberate decision to claim narrowly. Well, and you'll appreciate, I would submit, Your Honor, in Wilder, that's exactly what happened. There was a deliberate cancellation of broad method claims, a deliberate cancellation. And later on, after the patent issue. Again, I misunderstand the fact. Isn't this a question of whether to take the date when the drawings were incorporated or not? That was the decision, and that was the option that was given. But, Your Honor, the essence of our appeal here is that the board and the examiner before the board has conflated the PCT procedures with the national procedures. And let me say that again. Has conflated the PCT procedures with the national procedures. There is no question that when the election was made and the drawings were filed in February, that froze the international date at that point. But it was a conscious choice. It was a conscious choice. It was not unconscious. It was not a mistake. It was done specifically. As Judge Rich and as this court has adopted, a conscious decision, a mistake, includes by the very primary definition in the dictionary of a wrong choice. What about Meade from the CCPA? Meade is part of about 15 cases that the Patent Office has cited against us, which are all recapture cases. All of those cases regarded a deliberate decision to surrender subject matter in order to secure the allowance of a patent. No, but Meade was a conscious choice in breaking the important chance of co-patency by letting the application issue. That's right, Your Honor. The conscious choice made by the applicant at that point in time. Isn't this the same thing? I don't, with respect, Your Honor, I don't think so. Because the essence of this was, and there's no proof in the record about what caused the choice to be made, but the essence of our position was that in the national phase, not the PCP phase, in the national phase, there was an application in the building early enough which qualified. The Patent Office has conceded that the application without withdrawals was sufficient. That was the original priority application. It was filed in 1997. I'm not talking about, that one has never been contested. No, I'm talking about the next in the chain, the January 1998 application which did not have withdrawals. That was the PCT application. That was the PCT application. But when it hit the Patent Office as the receiving authority, it had immediate status. It was in the building. It was an application. It was there. And it has been conceded that it was sufficient without the drawings. I know a picture is worth a thousand words, but in this case, the drawings were needed. And the proof on that is overwhelming in this case. There have been two PhDs who have submitted declarations saying that the application was sufficient without the drawings. The Board itself has said that the application was sufficient under Article 11. Now, how does Section 251 apply? Let me read you a portion of it. Whatever any patent is to remember without any deceptive attention, deemed wholly or partly inoperative or invalid by reason of a defective specification or drawing. How does that statute apply here? You said the specification was adequate. How does the failure to claim to get the benefit of the earlier date fit within the statute? That was resolved by the D.C. Circuit in the Brenner case back in 1968 where there was a failure to follow the priority rules by following a certified copy and so on. The District Court said and was affirmed by the Court of Appeals that 251, and I'm quoting, is sufficiently broad an application to overcome the literal language of Section 119. Claiming less than we have the right to claim in 251 includes a priority claim. So that issue of looking at a priority claim as opposed to the claims themselves, which is the traditional way this comes up. A defective priority claim has been regarded as a 251 correctable error, if I can use that term. The same thing happened in the Fongen case in the CCPA in 1975 where there was a defect in the priority chain. And it was corrected. The second application there did not, I'm sorry, the second application did not refer to the first application. It referred to the foreign application. So a correction was made to take care of that. That was the defect. There was no problem with the claims. The defect was in the priority. The same thing in Sampson. There was a break in the chain. And the Court allowed under 251 the applicant to actually deal with an abandoned application and put the proper language in it. So the issue of whether or not this hits the threshold of 251 has long been resolved. The only reason why we're here today is that the Board announced that this was not an error or a mistake with 251. The Board announced this was an error of judgment. And they relied on the 1935 or 1936 case in Ray Murray. And that error of judgment case has never been followed by this Court in a particular situation like this. The essence of the appeal is that there was a sequence of events, all of which were followed, all of which allowed my client to get priority back. He filed his priority application, his original provisional. He filed a PCT, which met his PCT requirements under Article 11 without the drawings. Even the PTC authorities in the Patent Office offered him that option. He didn't take it, but they offered him that option. It was an official, real, live application at that time. 119 says on its face that if you file under 363, which is what he did, and you have a 112 disclosure and a cross-reference and all that stuff, then you are entitled to go back. And there's never been any issue in this case that that was not followed. The only issue is, as they say, there was an error of judgment. Now, to show you how extravagant the Board's position is, is that if you look at the very end of the Board's decision, they said even if they had done this within the year, done everything correctly, but had crossed out the provisional, decided just not to take the priority, just crossed it out, that would have been an error of judgment and therefore not correctable by issue. Your Honour, your rebuttal, would you like to use it or stay? I'd like to stay, Your Honour. Ms. Harding, is it? Yes. Thank you, Your Honour. May it please the Court. Your Honour mentioned the Mead case, which is highly relevant to this case. Reissue does not correct this type of error. This case shares a common thread with the recapture cases and the restriction cases, in that when an appellant is confronted with a choice, and they make that choice, reissue can't be used to take another path. For example, in restriction cases, when the PTO presents the applicant with a choice— Why is that? Is that because of the language of 251 or some overlay? That's because this Court's case law shows that there are only certain types of error correctable through the issue, and this type of error, when, in this case, the ranking was presented with a choice, the PTO informs him, you can either submit your drawings and lose your priority, or not submit your drawings and maintain your filing date. But, Your Honour, what case says an error of judgment does not qualify under 251? Well, there are different kinds of errors that qualify under 251. So, the Wilder case is a typical reissue case where an applicant underclaimed. There was no recapture issue in that case, in the issue. So, in this case, this is a type of error that can't be corrected, because the applicant made a deliberate choice to take one path, and that's what he did, particularly when the PTO informed him. What was the nature of the error? I believe the nature of the error was underclaiming, so a reissue was filed. Underclaiming? Yes. That's a little different, isn't it? Here was the question of underclaiming. Right, but the analogy to the recapture restriction cases, which are when an applicant makes a deliberate choice, when the PTO informs you that you can pick path A or B, the Wilder, arguably the appellant, was not told by the PTO, you can pick choice A or B. He was simply submitting his claims and finally going through his application. In this case, the PTO gave the applicant a choice. You can pick A or B. And when the applicant makes a choice, then he should not be able to go back on that choice, particularly because the public is relying on this file robber. They can see that on several occasions the Patent Office informed this applicant, you will lose your party claim if you submit these drawings, and he chose to submit the drawings. The other point that is— Does it make any difference if the Patent Office requests it or if the party does it voluntarily? I think— Does it do it on their own without any request from the Patent Office? I think it does, Your Honor, because it shows that this is a clear conscious choice that's been provided by the PTO, and you can then make an informed decision about the choice you want to make. What if there was no request from the Patent Office and the applicant just files the drawings? Files the drawings when? With the— With the February application. Right. I think in that case, still, the reason why the February date is the only filing date that can be given any legal effect is because the filing date is a critical date, and so when an applicant is going to submit documents to get this critical date, they need to ensure that their disclosure is complete. So in this case, Sarankin has a filing date of February 1998. He deliberately chose that date. He concedes the date was properly recorded. He concedes the date can't be moved. Well, he didn't do it deliberately. He just did it at the request of the Patent Office. Well, he could have chosen not to file the drawings and kept his original date and maintained his priority claim, but at this point, the February 1998 date does not allow him co-pendency to the provisional application that he wants to claim to, and so what Sarankin now wants is to keep his international filing date, the February date, but then to get some other date that he can claim co-pendency. There is no law, and there are no examples, that allow an applicant to have one filing date and then some other date to obtain co-pendency. Is this patent deemed wholly and abundantly inoperative or invalid? I would say it's not because it's an issued U.S. patent, and he can enforce it at this point. There's nothing wrong with it. The problem that he has is that he has made sales that are more than one year than his current filing date. But you're not saying that 251 does not cover. You're not saying that 251 doesn't cover the situation. Well, there were three cases. Three cases that were raised by Appellant. The Bondogen, Sampson, and the Brunner case. Keep asking about the statute. Keep walking away from the statute. I'm sorry. Keep asking about the statute, 251, whether it governs or doesn't. I think 251... I mean, at this point, there's nothing wrong with this patent, but 251 can be used to correct priority in certain situations, yes, because arguably the Appellant has... Only when the patent is inoperative or invalid. That's what the statute says. Well, arguably this patent... Okay, then arguably this patent is invalid because there is 102B on sale, RFI, and that will be used against this patent. Oh, then their situation fits within 251 and is error, which makes it partly or wholly invalid. So they come within 251. Why isn't it correctable error? Because the Patent Office can't accord one filing date to an application and then give it some other date so that he can claim co-pendency. And it's not an error because the Patent Office informed him of his choices, and he made a choice, which is very similar to restriction recapture cases. The Appellant raises three cases concerning perfecting priority, using ratio to perfect priority, and those cases are different because in those cases co-pendency was met, and in this case it's not. He can't get one date as a filing date and then get some other date to get co-pendency. Jim, in 251, which you were discussing with Judge Lord, what, in your views, does the word inoperative mean? Certainly invalid is clear, but what do you mean inoperative to me in the first sentence of 251? Arguably, the applicant should have claimed more or less than what they wanted to claim, and so they feel that their patent has given them less of an entitlement. Let me say inoperative because it's... According to you. You said partly inoperative, meaning it doesn't... If you think of it as a patent, sort of like a deed, it's partly inoperative in that it doesn't extend the boundaries either as far as it could or extend them further than it should. Right, and so in this case they feel that they should have the priority date 13 months back from what they currently have, and so for them it's partly inoperative. Would invalid and inoperative be the same as unenforceable? Well, unenforceability has to do with representations made. Well, if you know that a patent is invalid, it's unenforceable, isn't it? Yes, it is. So if there's a sale bar on this particular patent, then it would be unenforceable. True, but the problem the appellant has here is that he's been given a filing date, improperly accorded filing date, and the patent office can't give him a second date for him to claim the priority. So why can't it be corrected to 15 months? I think it would set a dangerous precedent to allow an applicant to have one filing date, which is a critical date in which it provides him with legal privileges, and then to give the applicant some other date so that he can claim priority to, which in its essence is giving him a second filing date. Only because he made a conscious choice to select one or the other? Yes. Not only because, but because the patent office can't give an applicant a second date. So there's two prongs and there's two reasons why this error can't be corrected under 251. First, the patent office has never given an application, whether it be U.S. or PCT, a filing date and then some other date. And second, when the applicant is provided two options and picks one, we should not be allowed to correct this type of error. You're relying on WILA. I'm not relying on WILA. You're not relying on WILA. Doesn't WILA deal with intent to claim? I think that... Clearly they didn't intend to maintain the earlier date. They elected the date of the drawings. Correct. So they didn't intend. Why doesn't WILA support your position? Oh, I'm not... WILA does the... WILA. W-I-L-A-R. Oh, WILA. I'm sorry. Well, WILA does say that the issue statute should be construed liberally, but it's not to correct every error that an applicant might make. And this is one of those errors that cannot be corrected for the issue. Thank you. Anything further? I just have one that has to do with the matter. In preparing for the oral argument, I noticed that the rhetoric on page 33, section D, on the fourth line down, miscites the law. The point is correct, Your Honor, but instead of rule, this... I think it's... Why don't you submit a document making that correction? Okay. Let me address Cassie's remarks about the public relying on the record here. Henry Doyle, which was decided by this Court five years ago, resolved the tension between the issue and the public. And the Court said clearly that the Congress has made that decision and the matters have rights under 251, and that's something that has been addressed by Congress, and the Court should not intervene, and that the matter should have the privilege of exercising those rights. The question that the presiding judge asked about 251 and holding it operative, was dealt clearly in Brenner, and I could just read one sentence in Brenner's decision, and I'm quoting, the plain meaning of this section, 251, the plain meaning of this section would seem to cover the situation that passed the issue as partly inaugurative, parentheses, insofar as did not include the priority right. There's no question that the law has been... But why didn't it in that case? Because in that case, there was a defect in not filing a certified copy of the foreign application, and the Court said that... Was that the result of a deliberate decision not to do that? No, Your Honor, that was a clerical, technical issue. But what is important is that Brenner has been relied on by the Patent Office itself, not cited in the Patent Office brief in Section 1402 of the NPDP, which sanctions exactly what we are doing here. The Patent Office has relied on the NPDP and elsewhere in its brief, but never mentioned Section 1402, which we rely on, which says that reissue can be invoked to perfect priority. And I might add, Your Honor, that there was a flurry of PCT sections presented by the Patent Office, but they overlooked one very important one, which brings us here in the national phase, and I keep saying in the national phase, and that's PCT Section 48A.2, which is quoted in our brief, which says that a member state, in this case the United States in its national capacity, can't forgive or revoke an excuse, any delay. And so when counsel says that the Patent Office can't issue two dates, again, they are conflating what happened in the PCT, which gives an international date, and what is going on in the United States, the Patent Office in its national capacity. Well, you need the PCT, don't you? Because when you filed the drawings, that was more than a year after you filed your U.S. provisional. Your Honor, with respect, I don't need the PCT with the drawings because in January, without the drawings, the application was deemed sufficient and admitted by the Patent Office. And then, and it's uncontested in the record, that once that went forward, and that's where the professors came in with their uncontested testimony, the drawings could have been added back in at that point without creating or introducing a new matter, and the Patent Office accepted that. The examiner's last answer, supplemental answer, said that adding the drawings back in would not create a new matter. So I come back to this chain of events. In January of 1998, the application was in the building. It didn't have drawings, but it was sufficient. When that happened, it fell around. And at that point, the application was entitled to proceed under Section 363. And under Section 119, which is the whole point of this priority chain, it references Section 363, and we were allowed to make that application. Now, this business, for 13 months, is really a red herring. There's never been a gap. There's never been 13 months. The application, the permission was filed within the 12-month period. The application within 12 months was sufficient. And all we're trying to do is to correct an error that was made, which was not an error of judgment under the law. It was a mistake. It was a deliberate choice, and we were entitled to have that corrected. Thank you, Mr. Nathan. We'll take case number 5 here.